IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JAMESON<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RINGSIDE DEVELOPMENT COMPANY dba Bio One Colorado, Inc., et al.,<br><br>　　　　Defendants. | Case No. 3:24-CV-08654-CRB<br><br>**ORDER GRANTING MOTION TO STAY** |

This action arises from a dispute between franchisee Kevin Jameson and franchisor Ringside Development Company. Jameson alleges several causes of action based on Ringside's allegedly fraudulent representations about its products. Ringside now moves to stay the action pending resolution of the dispute through contractually mandated alternative dispute resolution. The Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), vacates the hearing, and **GRANTS** Ringside's motion to stay.

## I.    BACKGROUND

Ringside, doing business as Bio One Colorado, Inc., is a franchisor in the biohazard remediation industry. Compl. (dkt. 1-3) at 3. Franchisees obtain the right to use Bio One's proprietary "system, trade names, and trademarks" to operate biomedical waste removal businesses. Mot. (dkt. 12) at 4. Jameson is one such franchisee, and his business operates in California. Compl. at 6. Jameson sued Ringside in Alameda County Superior Court, alleging that Ringside's equipment and chemicals were substandard and caused harm to Jameson's business. Id. at 2–3. Ringside removed this action to federal court. Notice of

Removal (dkt. 1).

One element of Ringside and Jameson's Franchise Agreement is a three-step alternative dispute resolution procedure that requires the parties to first meet face-to-face to resolve any disputes, then engage in mediation if the face-to-face meeting is unsuccessful, and ultimately arbitrate their disputes if mediation is unsuccessful. Mot. at 23–26. Jameson asserts that he sued (rather than filed an arbitration demand) because Ringside refused to meet face-to-face. Opp. (dkt. 15) at 5. Ringside maintains that it requested a face-to-face meeting but that Jameson refused to engage. Reply (dkt. 16) at 2. Ringside now moves to stay this proceeding pending resolution through the parties' agreed-upon alternative dispute resolution process. Mot. at 1.

## II. LEGAL STANDARD

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the [Federal Arbitration Act] compels the court to stay the proceeding." Smith v. Spizzirri, 601 U.S. 472, 478 (2024).[1]

A district court's role under the FAA is normally limited to determining two gateway issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). But "these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986)). In determining whether the parties agreed to delegate these issues to an arbitrator, courts "must first make a threshold finding that the document evidencing an agreement at least

---

[1] Contracts "evidencing a transaction involving commerce" are subject to the Federal Arbitration Act. See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 2). Neither party disputes that the FAA applies here.

purports to be a contract" before determining whether parties agreed to delegate questions of arbitrability. Galilea, LLC v. AGCS Marine Ins. Co., 879 F.3d 1052, 1056 (9th Cir. 2018) (cleaned up).

### III. DISCUSSION

Ringside moves to stay this proceeding pending resolution of the instant dispute through contractually mandated mediation or arbitration. Mot. at 1. Jameson opposes, making two primary arguments: (1) the parties did not establish mutual assent with regards to the forum selection and choice-of-law clauses in their arbitration agreement, so Ringside cannot insist upon out-of-district arbitration, and (2) Ringside failed to satisfy mandatory conditions precedent, such that Ringside cannot seek to compel arbitration. Opp. at 11–17. As to Jameson's first argument, there is sufficient evidence to conclude that there was a meeting of the minds with regards to the arbitration agreement, meaning that any issues of venue or choice-of-law are to be resolved by the arbitrator, not the Court. It therefore follows that, as to Jameson's second argument, the parties delegated to the arbitrator questions of arbitrability, which includes questions about whether the parties satisfied conditions precedent.

#### A. Existence of a Valid Contract

The Court must first determine whether a valid contract exists. "Although challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court." Kum Tat Ltd. v. Linden Ox Pasture, LLC, 845 F.3d 979, 983 (9th Cir. 2017) (citations omitted). Jameson does not appear to argue that the arbitration agreement itself is wholly invalid—but to the extent that he does, see Opp. at 17, the Court must decide this issue rather than delegating it to an arbitrator. See Belyea v. GreenSky, Inc., No. 20-cv-1693-JCS, 2020 WL 3618959, at *3 (N.D. Cal. July 2, 2020) ("The question of contract formation, however, is not a delegable gateway issue.") (citing Kum Tat, 845 F.3d at 983).

Jameson raises only one issue with respect to the validity of the contract—whether there was a lack of mutual assent regarding the arbitration agreement's venue and choice-

of-law provisions. Opp. at 16–17. According to Jameson, the Franchise Disclosure Document, given to him in advance of the Franchise Agreement, contained language he believed meant that the contract was to be governed by California law and that disputes between the parties were subject to arbitration in California. Id. at 14.

To the extent that Jameson's argument on this front challenges the validity of the contract in its entirety, it is not persuasive.[2] "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." Meyer v. Benko, 55 Cal. App. 3d 937, 942–43 (1976). Jameson plainly concedes that any disputes between himself and Ringside are subject to arbitration as long as the conditions precedent are met. See Opp. at 17 ("Had [Ringside] complied with mandatory and not permissive condition [sic] precedent for arbitration, any such arbitration must occur in California."). Jameson signed the contract, initialed the portion of the contract related to alternative dispute resolution, and conceded in his opposition that "arbitration must occur." Franchise Agreement (dkt. 14-1) § 16.1(d), Ex. 8 (Closing Acknowledgments); Opp. at 17. These are clear, outward manifestations of mutual assent. To the extent that issues of mutual assent as to specific contract provisions arise before the arbitrator, invalid clauses "can be severed, thus salvaging the remainder of the arbitration provision." See Bencharsky v. Cottman Transmission Sys., LLC, 625 F. Supp. 2d 872, 884 (N.D. Cal. 2008). But that is not an issue for the Court. A valid contract exists.

### B.  Delegation of Arbitrability

The Court must next determine whether, under federal arbitrability law, the delegation provision in the Franchise Agreement properly delegated the question of arbitrability to the arbitrator. A court "must [] resolve any challenge directed specifically to the enforceability of the delegation clause" and determine whether there is "'clear and unmistakable' evidence that 'the parties agreed to arbitrate arbitrability.'" Caremark, LLC

---

[2] And to the extent Jameson's argument here challenges the validity of only the venue and choice-of-law provisions, that issue is delegated to the arbitrator, as discussed below.

v. Chickasaw Nation, 43 F.4th 1021, 1029–30 (9th Cir. 2022) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  In deciding whether parties clearly and unmistakably agreed to delegate the question of arbitrability to an arbitrator, courts can consider evidence such as "a course of conduct demonstrating assent" or "an express agreement."  Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011) (citations omitted).  Silence or ambiguity must be construed in favor of the court deciding the issue of arbitrability. First Options, 514 U.S. at 944–45.

Ringside contends that the parties agreed to delegate the question of arbitrability to the arbitrator.  Mot. at 6.  The parties contractually agreed that "[a]rbitration will be held before and under the arbitration rules of" JAMS.  Id. (citing Franchise Agreement § 16.2(b)).  The current JAMS arbitration rules provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b) (2021), https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11.  And in the Franchise Agreement, the parties agreed that "the arbitrator will decide any factual, procedural, or legal questions relating to the dispute, including … whether this Article is applicable and enforceable."  Franchise Agreement § 16.5.

Ninth Circuit law supports Ringside's position.  In a similar case the Ninth Circuit held that "[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."  Patrick v. Running Warehouse, LLC, 93 F.4th 468, 481 (9th Cir. 2024).  Moreover, the delegation clause in the parties' contract expressly provides that "any factual, procedural, or legal questions relating to the dispute, including … whether this Article is applicable and enforceable," shall be decided by the arbitrator.  Franchise Agreement § 16.5.  This too is clear evidence of delegation.  The Ninth Circuit has found that nearly identical language establishes that

5

contracting parties agreed to arbitrate the question of arbitrability. See Momot, 652 F.3d at 988 ("We hold that this language, delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement.' In other words, the parties clearly and unmistakably agreed to arbitrate the question of arbitrability.") (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010)).

Jameson does not challenge the delegation provision of the franchise agreement or the JAMS Rules. Rather, he relies on the same argument discussed above—that there was a lack of mutual assent with respect to the arbitration agreement's venue and choice-of-law provisions. See Opp. at 17. But the delegation provision takes that question from the Court and delegates it to the arbitrator. Jameson is free to reraise his arguments before the arbitrator.

### C.   Conditions Precedent

All that is left is Jameson's final argument—that Ringside failed to satisfy mandatory conditions precedent to arbitration. Id. at 8. But this too is an issue of arbitrability reserved for the arbitrator. See Johnson v. Oracle Am., No. 17-cv-05157-EDL, 2017 WL 8793341, at *4 (N.D. Cal. Nov. 17, 2017) ("[T]he arbitrator decides whether the pre-arbitration steps of a grievance procedure were completed.") (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)). So the Court is, once again, not the appropriate entity to decide whether Ringside and Jameson abided by their contractual agreements to informally resolve any disputes before submitting to arbitration.

## IV.   CONCLUSION

The parties have clearly and unmistakably agreed to arbitrate arbitrability. Jameson's substantive arguments are therefore not before the Court. Accordingly, the Court **STAYS** this suit pending alternative dispute resolution.

**IT IS SO ORDERED.**

Dated: February 20, 2025



CHARLES R. BREYER
United States District Judge